# THE INDIANAPOLIS SOUTHERN RAILROAD COMPANY
## v. WALL.

[No. 7,905. Filed April 22, 1913. Rehearing denied June 26, 1913.]

1. CARRIERS.—*Railroads.—Injuries to Passengers.—Complaint.— Sufficiency.—Allegation of Negligence.—Proof.*—In a passenger's action against a railroad company for injuries sustained in attempting to board a train, a complaint charging that the train stopped at the station, and that plaintiff promptly proceeded to enter upon the steps, and, while so doing, defendant wrongfully and negligently started the train too hastily, by reason of which plaintiff was thrown and injured, is sufficient to withstand a demurrer, and under* such allegation of negligence proof was admissible to show that defendant did not allow plaintiff a reasonable time to board the train, or that defendant knowing that plaintiff was in the act of boarding, started the train while he was attempting to do so. p. 47.

2. CARRIERS.—*Railroads.—Injuries to Passengers.—Complaint.— Negligence.*—The rule that, as against a demurrer, where a duty is shown to exist, it is sufficient to allege the negligence in general terms without specifying the particular acts or omissions constituting the same, is applicable to a complaint by a passenger against a railroad company for injuries sustained in getting on or off a car. p. 47.

3. CARRIERS.—*Railroads.—Passengers Getting on or off Trains.— Duty of Carrier.—Negligence.*—It is the duty of a railroad company to stop its trains and give passengers time to get on or off, without haste or confusion, before starting; and even after waiting a reasonable time, it is negligence to start a train, where the servants in charge thereof know that some one is in the act of leaving or boarding the same. p. 47.

4. CARRIERS.—*Railroads.—Passengers on Station Platform.—Duty of Carrier.*—While a passenger is upon the premises or platform of the company before boarding a train, the company owes only a duty to use ordinary care for his safety. p. 48.

5. CARRIERS.—*Railroads.—Injuries to Passengers.—Complaint.— Verdict.*—Where the complaint to recover for injuries sustained in boarding a train charged that plaintiff was a passenger on defendant's road, a general verdict for plaintiff is a finding to that effect. p. 49.

6. CARRIERS.—*Railroads.—Passengers on Trains.—Duty of Carrier.*—The highest practical care for the safety of a passenger on its train is required of a railroad company in the operation of such train. p. 49.

7. CARRIERS.— *Railroads.— Injuries to Passengers.— Evidence.— Verdict.—Instructions.*—In an action against a railroad company for injuries sustained in attempting to board a train, a verdict which in effect finds that plaintiff was a passenger on the train at the time of the injury cannot be said to be without evidence for its support, where it was shown that plaintiff had hold of the iron rod, or handhold, on the side of the car, with his right hand, that he had a cane in his left hand and placed it on the step of the car, that his right foot was on the platform and the other was raised and had just reached and touched the step of the car, when the train was started and he was thrown; and, on such state of facts, an instruction on the theory that plaintiff was a passenger on the train, was not erroneous.  p. 49.

8. CARRIERS.—*Railroads.—Passengers.*—One who has purchased a ticket, and is upon the platform provided by the company for the use of passengers in getting on and off trains, is a passenger. p. 49.

9. CARRIERS.—*Railroads.—Injuries to Passengers.—Answers to Interrogatories.—Instructions.—Harmless Error.*—In a passenger's action for injuries sustained while attempting to board a train, answers by the jury to interrogatories that defendant did not stop its train a reasonable length of time to enable passengers generally to board the train, and that it did not stop its train a reasonable length of time to enable plaintiff to board it, amount to a finding that defendant did not exercise ordinary care, so that the error, if any, in an instruction stating a higher degree of care was harmless.  p. 50.

10. APPEAL.—*Review.—Harmless Error.—Instructions.*—Although instructions given are not accurate statements of the law, they will not work a reversal, where answers by the jury to interrogatories show that appellant was not harmed thereby.  pp. 50, 51.

11. CARRIERS.— *Railroads.— Injuries to Passengers.— Trial.— Instructions.*—Instructions, in a passenger's action for injuries sustained in boarding a train, stating that a reasonable time to give passengers an opportunity of boarding a train depends on the conditions and the number of persons getting on and off, that it was for the jury to determine whether defendant's train had stopped a reasonable time for the passengers to alight and for plaintiff and other passengers to get on before it started, and telling the jury that a carrier's duty is performed by stopping a reasonable or sufficient length of time to allow its passengers under ordinary circumstances to board the train, correctly stated the law.  p. 50.

12. CARRIERS.—*Railroads.—Passengers Boarding Trains.—Duty of Carrier.—Blind Passenger.*—Where those in charge of a train know that a passenger who is attempting to board the train is

blind, they must take that fact into consideration in determining the time that is necessary for him safely to board the train, and they owe him a special duty not to start the train until he is safely on board. p. 51.

13. APPEAL.—*Review.*—*Harmless Error.*—*Refusal of Instructions.*—Appellant was not harmed by the court's refusal to give certain requested instructions, where the record shows that the jury clearly comprehended the issue and decided it under a correct view of the law. p. 51.

14. CARRIERS.—*Railroads.*—*Injuries to Passengers.*—*Evidence.*—*Admissibility.*—In a passenger's action for injuries sustained in attempting to board a train, under a complaint alleging generally that defendant was negligent in starting the train, the admission of evidence to show the length of time the train stopped was not erroneous. p. 52.

15. APPEAL.—*Review.*—*Evidence.*—*Damages.*—Where plaintiff, at the time of his injury was about fifty-four years of age, and blind, and it was shown that prior to the injury he was able to earn a dollar a day, that since then he has not been able to work all the time, that when at work he can earn only one-half of what he formerly earned, that he has been put to expense for medical care and attention, that he suffers constantly from the injury and that when he attempts to work he becomes weak, sick and unable to continue for any considerable length of time, it cannot be said that an award of $2,500 damages was excessive. p. 52.

From Lawrence Circuit Court; *James B. Wilson,* Judge.

Action by James Wall against The Indianapolis Southern Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Ira C. Batman, Robert G. Miller, James W. Blair* and *James E. Kepperley,* for appellant.

*J. E. Henley* and *Rufus H. East,* for appellee.

FELT, P. J.—This is a suit for damages for personal injuries alleged to have been received by the appellee on account of the negligence of appellant. The errors assigned and presented by appellant's brief are: (1) the overruling of appellant's demurrer to the complaint; (2) overruling the motion for a new trial. The complaint is in one paragraph and in substance charges: that on June 25, 1909, appellant

was the owner of a line of railway extending through the states of Indiana and Illinois and through the town of Unionville and the city of Bloomington, Indiana, and engaged in the business of carrying passengers for hire on said road; that on said date appellee purchased of appellant's local agent at Unionville a ticket entitling him to be carried as a passenger from that town to the city of Bloomington; that at said time appellee became and was a passenger of appellant on said road to be carried from said town of Unionville to the city of Bloomington; that appellant thereby agreed to carry appellee safely from said town to said city, and to furnish him suitable and proper means and opportunity whereby he could safely enter appellant's train on said road, and was then and there bound to stop its train a sufficient length of time to enable him to get upon the same; that appellee was blind and on said day was accompanied by a companion to assist him in entering appellant's train, all of which facts were well known to appellant at said time; that appellant failed and neglected to perform its duty to appellee in this: that when said train arrived at the station of Unionville and stopped, appellee "promptly proceeded to enter upon the steps of one of defendant's passenger cars for the purpose of boarding said train"; that while so attempting to enter upon the steps of said car appellant by its servants and agents wrongfully, negligently and carelessly started said train with a sudden lurch, then and there, and thereby throwing appellee down on the side of said car between the station platform and the side of the car, thereby bruising, straining and injuring his back, his spine, his left knee, his left shoulder and thereby causing him great physical pain and suffering, and incapacitating him for the performance of any labor; that all of said injuries were caused solely by reason of the negligence and carelessness of appellant, "in too hastily starting said train as aforesaid, and without any fault and negligence upon the part of the plaintiff."

Appellant asserts that the complaint is insufficient because it fails to allege that appellant failed to stop its train a reasonable length of time to permit appellee to get on the same in safety, or that appellant knew that appellee was attempting to get on the train when it was started as aforesaid. The complaint charges that the train stopped at the station and appellee "promptly proceeded to enter upon the steps", etc., and "that while so attempting to enter upon said steps", appellant wrongfully and negligently started the train and threw appellee down and injured him, all of which was caused solely by appellant "too hastily" starting said train. Where it is shown that a duty exists, it is sufficient as a matter of pleading, as against a demurrer to allege the negligence in general terms without specifying the particular acts or omissions which constitute the negligence. This general proposition has been applied to the stopping and starting of trains for passengers either to alight from, or board cars. The allegation that the train was negligently started while appellee was in the act of boarding the same, is sufficient to withstand the demurrer, and under such allegations proof was admissible to show that appellant did not allow a reasonable time for appellee to board the train before starting it, or that apppellant knew appellee was in the act of boarding its cars and started the train while he was attempting so to do. *Lake Erie, etc., R. Co.* v. *Beals* (1912), 50 Ind. App. 450, 98 N. E. 453. The case last cited gives a clear discussion of the duty of a railroad company to persons either alighting from or boarding trains as passengers, and in effect holds that it is the duty of such railroad company to stop its trains and give passengers a reasonable time to alight from or board the train, without haste or confusion, before starting; that after it has waited such reasonable time it is not negligence to start the train, unless the servants of the company who control the stopping and starting of the train

know that some person is in the act of leaving or boarding the train, in which event it is negligence to start the train while the passenger is attempting either to leave or board the train even though a reasonable time may have been given to enable the passenger so to do.

The jury in answer to interrogatories returned with its general verdict, in substance found, that on the day that appellee took passage to Bloomington, Indiana, as alleged in the complaint, appellant's conductor in charge of said train and its agent at Unionville knew before said accident occurred that appellee was blind, and on said day did not stop its train at said station of Unionville, for a reasonable length of time to enable passengers to alight therefrom or board the train, and did not on said day at said place stop its train a reasonable length of time to enable appellee to board the same; that when said train stopped at Unionville, appellee with ordinary promptness attempted to board the same; that the train was standing still when he made said attempt; that while so attempting to board the train, he was thrown to the platform and ground, and injured by the starting of the train which he was attempting to board.

In its motion for new trial appellant has assigned as causes the giving of certain instructions and the refusal of· the court to give certain instructions tendered by it; error in the admission of certain evidence; that the verdict of the jury is contrary to the law and is not sustained by sufficient evidence. Appellant objects to several instructions given, and asserts that the court was in error in failing to distinguish between the duty that a railway company owes to a passenger on· a train, and to one who is on its platform or premises for the purpose of leaving or boarding a train. It is not denied that a person who has procured a ticket,

4. and is upon the platform provided by the railway company, preparatory to boarding the train, is a passenger, but it is asserted that while upon the platform or premises of the company before boarding the train, the duty

which the company owes to such passenger is to use ordinary care for his safety; that the rule of the highest practical care and diligence for his safety which obtains after he is on the train, has no application to a passenger who is not actually on the train.    The law has been declared substantially in harmony with appellant's contention.    *Pere Marquette R. Co.* v. *Strange* (1908), 171 Ind. 160, 84 N. E. 819, 85 N. E. 1026, 20 L. R. A. (N. S.) 1041.    In this particular case, the complaint charges that appellee was a passenger on appellant's road, to be carried by it to Bloomington, Indiana, and the general verdict is a finding to that effect.    If he was such passenger, the highest practical care for his safety was required of appellant, in the operation of its train, but if he was only a passenger on the platform, the rule of ordinary care was applicable.

Whether appellee was on, or off, the train when it started, was a question of fact for the jury to determine from the evidence.    There was not much discrepancy in the testimony on this point.    It tended to show that appellee had hold of the iron rod, or handhold, on the side of the car with his right hand; that he had a cane in his left hand and had placed it on the step of the car; that his right foot was on the platform and the other was raised and had just reached and touched the step of the car when the train was started and he was thrown down.    The verdict is a finding that appellee was a passenger on the train when he was injured, and we cannot say there is no evidence to support such conclusion.    On such a state of facts it was not error to give instructions on the theory that appellee was a passenger on the train.    But whether appellee was on or off the train, he was a passenger when he purchased his ticket and was on the platform, provided by the company for the use of passengers in getting on and off its trains.    *Pere Marquette R. Co.* v. *Strange, supra* 164.

It was the duty of appellant to stop its train a reasonable length of time to enable all persons desiring to board the same as passengers to do so. By answers to interrogatories, the jury found that appellant did not stop its train a reasonable length of time to enable passengers generally to board the train, and also that it did not stop its train a reasonable length of time to enable appellee to board it. This is a finding that appellant did not exercise ordinary care, and if it be conceded that the instructions are erroneous in stating the care required of appellant, the error is harmless because the finding is against the company if its care be measured by the lower standard of ordinary care.

It is also contended that some of the instructions given are erroneous in stating in substance that appellant was required to stop its train long enough to enable all passengers desiring so to do to board the train. Some of these instructions are not accurate statements of the law as above announced, but the answers of the jury to the interrogatories, as above set out, show that appellant was not harmed for the reasons already stated. Furthermore, instruction No. 8 given to the jury at the request of appellant, states that what is a reasonable time to give passengers an opportunity of safely boarding a train, depends upon the conditions and the number of persons getting on and off the train. This instruction concludes as follows: ''So the question for you to determine in this case is, did the train on which the plaintiff took passage stop a reasonable time for all the passengers to alight, and for the plaintiff and other passengers to get on before it started.'' In instruction No. 11 given at appellant's request after some preliminary statements the jury was told that ''the duty of a carrier is performed by stopping a reasonable or sufficient length of time to allow its passengers under ordinary circumstances to get aboard the train.'' It is thus apparent that the jury was given the correct rule with reference to

the duty of the company to hold its train a sufficient length of time to give a reasonable opportunity to passengers to board the same. True the instructions given at the request of appellant, and those given at the request of appellee are not in exact accord on the question of the opportunity to be given passengers to get on or off a train, but the answers of the jury to the interrogatories clearly indicate that it was neither misled nor confused by the instructions complained of, and that its finding was based on the correct rule of reasonable opportunity. It also appears from the answers of the jury to the interrogatories that the persons in charge of the train which appellee attempted to board, knew that he was blind and that he was on the platform for the purpose of boarding the train. The answers further show that with this knowledge the appellant did not give appellee a reasonable opportunity to board its train before starting it. If those in charge of the train knew that appellee was blind and was attempting to board the train, it then owed him the special duty of not starting the same until he was safely on the train. If those in charge of a train have actual knowledge that one is boarding the train, even though they may have waited a reasonable time, they cannot start the train while such person is attempting to board the same without being negligent in so doing. If in addition to the knowledge that he was attempting to board the train, appellant's servants also knew that he was blind, it was their duty to take such fact into consideration and to act accordingly in determining the time that was necessary for appellee safely to board the train.

Appellant was not harmed by the refusal of the court to give certain instructions tendered by it. The issue was not complicated and the record shows that the jury clearly comprehended the issue and decided it under a correct view of the law. *Lake Shore, etc., R. Co.* v. *Myers* (1912), 52 Ind. App. 59, 98 N. E. 654, 100 N. E. 313, 317.

The admission of evidence complained of, is with reference

to evidence tending to show the length of time the train stopped. Appellant contends that such evidence was inadmissible under the averments of the complaint; that the theory of the complaint is, not that appellant failed to give a reasonable opportunity to its passenger to board the train, but that it was negligent in starting the same with a sudden lurch. As already indicated, we do not agree with such construction of the complaint, and hold that its averments are sufficient to admit proof tending to. show that the train was not held a sufficient length of time to give a reasonable opportunity for appellee to board the same, and to permit appellant to prove that it did give such reasonable opportunity and was free from fault. We therefore conclude that there was no error in the admission of the evidence complained of. What we have already said with reference to the complaint and the instructions, gives a sufficient answer to the propositions that the verdict is contrary to law and not sustained by sufficient evidence.

The jury awarded damages in the sum of $2,500 and appellant asks that we set the verdict aside on the ground that the amount is excessive in such degree as to make it the duty of this court so to do. The evidence shows that appellee was about fifty-four years of age at the time of the accident, and blind; that before his injury he was able to earn about a dollar a day, and that since his injury he has not been able to work all the time, and when he does, can earn only about half the amount he did before his injury; that he has been put to expense for medical care and attention; that he is a constant sufferer due to said injuries, and when he attempts to work his pain is increased and he becomes weak, sick and unable to continue for any considerable length of time. The jury was fairly instructed on the question of the measure of damages and was informed among other things that damages were to be awarded only as compensation for the injuries received in case appellant was found liable as alleged. We cannot say that the dam-

ages are so large as to induce the belief on the part of this court that the jury acted from prejudice, partiality, or corruption, and therefore cannot reverse the judgment on the ground that the damages are excessive. *Southern R. Co.* v. *Crone* (1912), 51 Ind. App. 300, 99 N. E. 762; *Indianapolis, etc., Transit Co.* v. *Reeder* (1912), 51 Ind. App. 533, 100 N. E. 101.

There is no available error shown by the record.

Judgment affirmed.

NOTE.—Reported in 101 N. E. 680. See, also, under (1) 6 Cyc. 626; (2) 29 Cyc. 570; (3) 6 Cyc. 612; (4) 6 Cyc. 605, 608; (5) 38 Cyc. 1869; (6) 6 Cyc. 622; (8) 6 Cyc. 537; (9) 38 Cyc. 1815; (12) 6 Cyc. 613; (13) 38 Cyc. 1817; (14) 6 Cyc. 628. As to carrier's duty to give notice of starting of train, see 7 Am. St. 835. As to who are passengers and when they become such, see 61 Am. St. 75. As to the care and duty imposed upon a railroad company with respect to sick, aged and feeble passengers, see 97 Am. Dec. 499. As to the carrier's duty to see that passenger has alighted before starting train at station, see 25 L. R. A. (N. S.) 217. As to the time allowed passenger to alight, see 4 L. R. A. (N. S.) 140. As to the duty to protect person about to take train, see 42 L. Ed. U. S. 491. As to the degree of care toward passenger at station, see 33 L. R. A. (N. S.) 855. As to the duty of a carrier to blind passenger, see 38 L. R. A. (N. S.) 564. As to the duty of a railroad company to allow passengers time to board or alight from the trains, see 7 Ann. Cas. 760; 14 Ann. Cas. 962; Ann. Cas. 1912 C 794.